UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARKA C. WARD, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) No. 4:17-CV-01371-SPM |
| | ) |
| TROY STEELE, | ) |
| | ) |
| Respondent, | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Missouri state prisoner Marka C. Ward's ("Petitioner") *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 7). For the following reasons, the petition for a writ of habeas corpus will be denied.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is currently an inmate at the Eastern Reception, Diagnostic, and Correctional Center in Bonne Terre, Missouri. In 2013, a jury convicted Petitioner of first-degree robbery, and he was sentenced to thirty years' incarceration.

On direct appeal, the Missouri Court of Appeals affirmed his conviction, and summarized the facts, presented in the light most favorable to the verdict, as follows:

> Bruce Koller ("Koller") was a cashier at a Firestone Complete Auto Care business in St. Louis County. Around 10:30 p.m. on April 28, 2012, Koller locked up the business and walked to his car. As Koller was putting his things in the car, a man who was wearing a cape and had long dreadlocks came up behind Koller and told him not to move or he'd "blow [his] ass away." The man, later determined to be Ward, put a cold metal object up to Koller's head and neck and demanded money. Koller gave him four dollars in cash along with his paycheck. Koller was able to view Ward's face clearly at this time. Ward then

demanded that Koller go back into the store and open the safe. The two men entered the store; however, Koller did not know the combination to the safe and could not open it. Koller instead offered Ward cigarettes and lottery tickets. Ward agreed and asked for a bag to hold them. As Koller went to get a bag, he was able to press the store's silent alarm. When Ward saw the police coming, he ran out of the store. Koller was able to observe Ward throughout the incident, which lasted a total of 20 to 25 minutes.

        Officer Billy Curry ("Officer Curry") responded to the silent alarm and, upon arriving, shined a spotlight on the store. Officer Curry saw a black male run around the side of the store and hop a fence near a wooded area. When backup arrived, Officer Curry and another officer entered the wooded area to search for Ward. The officers came upon a mattress set in the woods with two feet sticking out of the end. The officers lifted the mattress and saw Ward lying motionless underneath. Ward's clothing was completely dry despite the fact that it had rained all day. Once the officers saw Ward's chest move and they knew he was alive, they turned him over and put him in handcuffs. Officer Curry did not see anyone other than Ward in the woods during his search. Ward would not respond when the officers asked who he was and what he was doing there. The officers searched Ward for identification but found none. The officers then took Ward out of the woods to the parking lot of a liquor store adjacent to the wooded area.

        The police drove Koller to the liquor store to see if he could identify the suspect as the person who robbed him. One officer was standing on each side of the suspect, who was approximately 40 feet away from Koller. Koller was not able to see Ward's face from that position, but Koller told police that Ward looked like the person who robbed him and had the right build. The only problem was that Ward had short hair, which was different from his recollection of the robber's hair. When the police asked Koller if there was anything he could tell them that would indicate Ward was the robber, Koller told them to search Ward's pockets for the four dollars in cash and Koller's paycheck. An officer searched Ward's pocket and discovered Koller's cash and paycheck.

        Police searched the scene that night and found a piece of a wig under a branch in the woods. A second piece of a wig was found close to the entrance to the wooded area. The following morning, Officer Curry returned to the Firestone store and began retracing Ward's tracks. While in the wooded area, Officer Curry recovered a black cape. Police also found Ward's vehicle parked in the liquor store parking lot. Ward's wallet was in the passenger seat, and the keys were in the ignition.

Resp. Ex. E at 2–4.

In his appeal of the motion court's denial of his motion for post-conviction relief, Petitioner raised two claims. Petitioner claimed that the motion court erred in denying his claims, because his trial counsel was ineffective in (1) failing to object when the state introduced the paycheck and

2

cash into evidence; and (2) failing to request a mistrial when State's witness, Officer Bill Curry, testified that Petitioner was uncooperative and did not say anything to police. The Missouri Court of Appeals affirmed the motion court's decision. Resp. Ex. I at 7.

On April 21, 2017, Petitioner filed his *pro se* petition in the instant action. Petitioner raised five claims: (1) violation of his constitutional rights based on the trial court's allegedly erroneous decision to overrule the motion to suppress evidence of the paycheck and cash found in Petitioner's pocket; (2) violation of his constitutional rights based on the trial court's allegedly erroneous decision to overrule the motion to suppress evidence of Koller's identification of the Petitioner; (3) his trial counsel was ineffective in failing to object when the state introduced the paycheck and cash into evidence; (4) his trial counsel was ineffective in failing to request a mistrial when State's witness, Officer Bill Curry, testified that Petitioner was uncooperative and did not say anything to police; and (5) the Missouri Court of Appeals allegedly abused its discretion in declining to exercise plain error review of his claim that the trial court erred in allowing evidence under an exception established in Missouri jurisprudence. Respondent filed a response (Doc. 14), and Petitioner filed a traverse (Doc. 16).

## II. LEGAL STANDARDS

### A. Standard for Reviewing Habeas Corpus Claims on the Merits

A federal judge may issue a writ of habeas corpus freeing a state prisoner, if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a). However, the judge may not issue the writ if an adequate and independent state-law ground justified the prisoner's detention, regardless of the federal claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-88 (1977).

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may not grant relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the States court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

### B. Procedural Default

To preserve a claim for federal habeas review, a state prisoner must present that claim to the state court and allow that court the opportunity to address the claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992) and *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) (en banc)). "The procedural default doctrine and its attendant 'cause and prejudice' standard are 'grounded in concerns of comity and federalism,' *Coleman*, 501 U.S. at 730, and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack. *Murray v. Carrier*, 477 U.S. 478, 490-92 (1986). To demonstrate cause, a petitioner must demonstrate that the claimed errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)) (internal quotation marks omitted).

## II. DISCUSSION

Petitioner's first four claims were addressed on the merits in a state court proceeding. As such, the AEDPA requires this court to exercise only limited deferential review of the underlying state court decision. *See* 28 U.S.C. § 2254. This Court will grant relief only if the state's

adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

### A. Ground One: Trial Court's Failure to Suppress Evidence

In Ground One, Petitioner argues that the trial court erred in failing to suppress evidence found on Ward's person after police searched him. Specifically, Petitioner argues the trial court should have suppressed the cash and paycheck found in Petitioner's pockets. Despite Petitioner's allegations that his Fifth, Sixth, and Fourteenth Amendment rights were violated by the alleged error, his claim uniquely implicates the Fourth Amendment, which protects against "unreasonable searches and seizures" in the absence of probable cause. U.S. CONST. amend. IV. *See Gerstein v. Pugh*, 420 U.S. 103, 115 (1975). Accordingly, the Court will analyze Petitioner's claim under only the Fourth Amendment.

The Supreme Court of the United States has held that Fourth Amendment claims are not cognizable in a federal habeas action unless a petitioner did not receive a "full and fair opportunity" to litigate the claim. *Stone v. Powell*, 428 U.S. 465, 494 (1976). The Eighth Circuit has interpreted *Stone* to allow Fourth Amendment claims as a cognizable basis for habeas relief in two distinct situations: (1) when the "state provided no procedure by which the prisoner could raise his Fourth Amendment claim," or (2) when "the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." *Willett v. Lockhart*, 37 F.3d 1265, 1273 (8th Cir. 1994) (en banc) (adopting the Second Circuit's test set out in *Capellan v. Riley*, 975 F.2d 67, 70 (2nd Cir. 1992)).

The first part of the test is "simple enough—either the state has a system available for raising Fourth Amendment claims or it does not (and we are unaware of any state that does not)." *Id.* at 1272. Missouri provides a procedure for raising Fourth Amendment claims, including Missouri Supreme Court Rule 24.05 and Mo. Rev. Stat § 542.296, so Petitioner does not fall under the first exception to the *Stone*-bar. *See Wright v. Godert*, No. 4:15-CV-00720-PLC, 2019 WL 414807, at *8 (E.D. Mo. Feb. 1, 2019).

For the second prong, whether a defendant was precluded from using the State's procedure due to an "unconscionable breakdown in the underlying process," the Eighth Circuit has stated that, "it will be the rare case where there is a failure of that mechanism that reaches constitutional dimensions." *Willett*, 37 F.3d at 1272. The Eighth Circuit further instructed that "federal courts on habeas review of such claims are not to consider whether full and fair litigation of the claims in fact occurred in the state courts, but only whether the state provided an opportunity for such litigation." *Id.* at 1273. The State of Missouri unquestionably afforded Petitioner an opportunity for full and fair litigation of his claims. Additionally, there is no evidence in the record indicating that he may have been foreclosed from using the procedure because of an "unconscionable breakdown in the underlying process." *Id.* at 1272.

Accordingly, Petitioner's Fourth Amendment claims are not cognizable under *Stone v. Powell*, and this Court will not grant relief on Ground One.

**B. Ground Two: Trial Court's Failure to Suppress Eye-witness Identification**

In Ground Two, Petitioner alleges that the trial court erred in denying Petitioner's motion to suppress the eye-witness identification. "A conviction based on eyewitness identification at trial will be set aside only when pre-trial identification procedures were so impermissibly suggestive that they give rise to a very substantial likelihood of irreparable harm." *Trevino v. Dahm*, 2 F.3d

829, 833 (8th Cir. 1993). *Accord Palmer v. Clarke*, 408 F.3d 423, 435 (8th Cir. 2005). "Reliability is the linchpin in determining the admissibility of identification testimony[.]" *United States v. Davis*, 103 F.3d 660, 669 (8th Cir. 1996) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 113 (1977)). "The factors to be considered in the Court's analysis of the reliability of identification testimony are the witness's opportunity to view the defendant at the time of the crime, the witness's degree of attention at the time of the crime, the accuracy of the witness's prior description, the witness's level of certainty at the line-up, and the length of time between the crime and the line-up." *United States v. Fields*, 167 F.3d 1189, 1190 (8th Cir. 1999). The totality of these factors is then weighed "against 'the corrupting effect of the suggestive identification itself' to determine whether suppression is warranted." *Davis*, 103 F.3d at 670 (quoting *Manson*, 432 U.S. at 114). And, "[w]hether an identification was reliable is a question of fact," the state courts' determination of which is to be accorded "a high measure of deference." *Mack v. Caspari*, 92 F.3d 637, 642 (8th Cir. 1996).

Koller had ample opportunity to view Petitioner. Koller testified that he was right next to Petitioner throughout the robbery, which lasted 20 to 25 minutes. Resp. Ex. A at 8. Although Koller testified it was fairly dark outside the store and dark inside the store, he also testified that he "got a good look" at the robber. *Id.* at 8, 13. *See Collins v. Dormire*, 240 F.3d 724, 727-28 (8th Cir. 2001) (finding eyewitness's identification of defendant to be reliable when the eyewitness had stood five to six feet away from defendant for a few minutes). Koller was also attentive at the time of the crime. He testified that he tried to "check him out" whenever he could during the robbery except when the robber knew he was watching. Resp. Ex. A at 195. Koller's description of the robber was almost identical to Petitioner when Petitioner was initially apprehended. Koller told the police that the suspect looked like the person that robbed him and had the same build, but the

suspect's hair was too short. Resp. Ex. A at 9. At that time, Koller did not know that a wig had been found in the woods when he made his identification. *Id.* at 16. Koller was not certain enough to make a positive identification at that time because Petitioner had short hair, but Koller told the police that Petitioner had the same build as the robber and "kind of looks like the guy." *Id.* at 17. The length of time between the crime and the identification was relatively short. According to Koller, only 30 to 45 minutes elapsed between the incident and when the police took him to identify Petitioner. *Id.* at 6.

The state trial court concluded that the identification procedures used in the pre-trial identification of Petitioner were not so impermissibly suggestive as to taint the in-court identification of Petitioner by Koller. *Id.* at 22. The trial court's determination was affirmed on appeal. *See* Resp. Ex. E at 10–11 ("Considering the factors described in *Manson*, we hold that the suggestive procedure did not so taint Koller's in-court identification of Ward as to render it unreliable."). Under the totality of circumstances, the court concludes that the record supports these findings. Koller had an opportunity to observe the robber, who was right next to Koller throughout the robbery. The police took Koller to identify Petitioner only 30 to 45 minutes after the robbery and Petitioner's short hair and the fact that a wig was later found by the police in the woods prevented Koller from being certain in identifying Petitioner. *See Mack*, 92 F.3d at 642 (finding identification by victim reliable, although victim had been drinking and using amphetamines and the assault was outside in the predawn hours, the defendant had been only two feet away from defendant at one point and victim had confronted defendant at trial only six months after line-up). "'[A]ny remaining concerns about the suggestiveness of the identification procedure or the reliability of the out-of-court identification were for the jury to resolve,'" *Mack*,

92 F.3d at 643 (quoting *Dodd v. Nix*, 48 F.3d 1071, 1075 (8th Cir. 1995)), which the jury in Petitioner's case did.

Accordingly, the Missouri Court of Appeals decision was not "contrary to, [nor did it] involve[ ] an unreasonable application of clearly established Federal Law," 28 U.S.C. § 2254(d), and this Court will not grant relief on Ground Two.

**C. Grounds Three and Four: Ineffectiveness of Trial Counsel**

To succeed on an ineffective assistance of counsel claim, Petitioner must show 1) that counsel failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation, and 2) that Petitioner was prejudiced by counsel's failure. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* standard is a high bar to pass as "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgement." *Id.* at 690. When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and Strickland establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 699 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.*

    a. Ground Three: Trial Counsel's Failure to Object to Evidence

In Ground Three, Petitioner claims that his trial counsel was ineffective for failing to object when the state introduced the paycheck and money into evidence. In its post-conviction opinion,

the Missouri Court of Appeals found that the second *Strickland* prong, prejudice, was not satisfied. It stated:

> Movant argues that had trial counsel objected to the admission of evidence found in his pockets, there is a reasonable probability that the outcome of the case would have been different. In order to prevail on his ineffective assistance of counsel claim, Movant must satisfy both the performance prong and the prejudice prong of the Strickland test. Assuming arguendo that the court would have sustained an objection to the admission of contents of Movant's pockets, we reject Movant's argument that the admission of the evidence was outcome determinative of his trial. Here, Movant has not shown prejudice from counsel's failure to object. In light of the overwhelming evidence of Movant's guilt, we are not persuaded that the admission of the disputed evidence so influenced the jury that, had the evidence been excluded, there is a reasonable probability the jury would have reached a different conclusion.

Resp. Ex. I at 4-5 (internal citations omitted).

The Missouri Court of Appeals' decision was not contrary to or an objectively unreasonable application of *Strickland*. The court properly articulated the *Strickland* standard. Resp. Ex. I at 3. With regard to the second *Strickland* prong, it was not objectively unreasonable for the state court to find that Petitioner was not prejudiced by trial counsel's failure to object to the admission of the money and check into evidence. Therefore, the Missouri Court of Appeals decision was not "contrary to, [nor did it] involve [] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d).

For all of the above reasons, the Court will deny relief on Ground Three.

### b. Ground Four: Ineffectiveness of Trial Counsel for Failure to Request Mistrial

In his fourth claim for relief, Petitioner argues that trial counsel was ineffective for failing to request a mistrial when Officer Curry testified that Ward was uncooperative and did not say anything to the police. In its post-conviction opinion, the Missouri Court of Appeals found that neither of the two *Strickland* prongs was satisfied. It stated:

> In his amended motion, Movant alleged that Officer Curry testified that Movant was uncooperative and that he did not say anything. Movant alleged that

counsel objected and that the court sustained the objection, but that counsel failed to request a mistrial. Movant further alleged that counsel asked questions on cross-examination about Movant's post-arrest silence. Movant alleged that evidence of Movant's post-arrest silence was inadmissible and that counsel was ineffective for failing to request a mistrial and for eliciting additional evidence of Movant's post-arrest silence on cross-examination.

Here, the motion court held an evidentiary hearing on this claim during which Movant's trial counsel testified that he did not request a mistrial after the court sustained his objection to Officer Curry's testimony on direct examination because the court granted the remedy he requested and he did not want to draw the attention further to the subject of Movant's silence. Trial counsel further testified that he knew that Movant was not given the Miranda warnings and that he did not make any incriminating statements but wanted to show that Movant made no incriminating statements. Trial counsel testified that his cross-examination was a matter of trial strategy and that the questioning did not reveal any incriminating evidence. The motion court denied Movant's claim, finding that a mistrial was not warranted and that counsel acted as a reasonably competent attorney in conducting the cross-examination. The motion court's findings and conclusions are not clearly erroneous.

Failure to object to evidence is not sufficient, in and of itself, to constitute ineffective assistance of counsel; in order to prevail on a claim of ineffective assistance of counsel for failing to object to evidence, movant must show that: (1) the objection would have been meritorious, and (2) the failure to object resulted in substantial deprivation of his right to a fair trial. Moreover, to succeed on a claim of ineffective assistance of counsel for failure to object to evidence, the movant bears the burden of proving the failure to object was not strategic and was prejudicial.

While the State may not use post-arrest silence as affirmative proof of the defendant's guilt, the defendant's pre-Miranda silence may be used for purposes of impeachment when the circumstances are such that the silence may be probative.

Our review of the record indicates that the prosecutor did not use Movant's post-arrest silence as evidence of guilt but merely asked about Officer Curry's investigation and Movant's cooperation. Moreover, trial counsel objected and the trial court sustained the objection. It was reasonable trial strategy for counsel not to request a mistrial in order to avoid highlighting the statements. "The granting of a mistrial is a drastic action that should only be taken in those circumstances where no other curative action would remove the alleged prejudice suffered by the defendant." *State v. Stone*, 280 S.W.3d 111, 116 (Mo. App. E.D. 2009). Here, Movant cannot show that trial counsel was ineffective for failing to request a mistrial during the State's direct examination of Officer Curry. Additionally, Movant cannot show that trial counsel was ineffective for questioning Officer Curry on cross-examination about Movant's failure to make statements. Trial counsel sought to show through the cross-examination of Officer Curry that there could have been other reasons for

> Movant's silence besides the lack of cooperation with the police. This cross-examination did not elicit further detail about Movant's silence and it was not prejudicial to Movant's defense. Point II is denied.

Resp. Ex. I at 5-7.

The Missouri Court of Appeals' decision was not contrary to, nor was it an objectively unreasonable application of *Strickland*. The court properly articulated the *Strickland* standard. Resp. Ex. I at 3. Concerning the first *Strickland* prong, it was not objectively unreasonable for the state court to find trial counsel not deficient for failing to request a mistrial, and it was reasonable trial strategy for counsel to avoid highlighting the officer's statements. Moreover, it was not unreasonable for the state court to find that Petitioner was not prejudiced by the trial counsel's failure to request a mistrial when the prosecutor did not use Petitioner's post-arrest silence as evidence of guilt, trial counsel did object to the officer's statements, and the trial court sustained the objection. Therefore, the Missouri Court of Appeals decision was not "contrary to, [nor did it] involve [] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d).

For all of the above reasons, the Court will deny relief on Ground Four.

### D. Ground Five: Missouri Court of Appeals Error

In Ground Five, Petitioner argues that the Missouri Court of Appeals erred in declining to exercise plain error review of his claim that the trial court erred in allowing evidence obtained after a search of his pockets, under an exception established in Missouri jurisprudence. To receive relief from this Court, Petitioner must allege that his custody violates the Constitution or the laws of the United States. 28 U.S.C. § 2254(a). "Determinations of state law made by a state court are binding on a federal court in habeas proceedings." *Lupien v. Clarke*, 403 F.3d 615, 619 (8th Cir. 2005). This court cannot "second-guess the decision of a Missouri state court on Missouri law." *Arnold v. Dormire*, 675 F.3d 1082, 1086 (8th Cir. 2012). Even if the Missouri Court of Appeals violated its procedural rules regarding review of unpreserved claims, that would not be a matter of federal

concern. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions.)

Because Petitioner's claim in Ground Five is not cognizable in a federal habeas proceeding, the Court will not reach the merits and will deny relief on Ground Five.

### III. CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). The Court finds that reasonable jurists could not differ on Petitioner's claim, so the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS FINALLY ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

A separate Judgment shall accompany this Memorandum and Order.

                                                                                      /s/ Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of February, 2020.